LANDRY, Judge.
This is a tort action wherein plaintiff, Nathaniel Shepherd, seeks recovery of damages from defendants, Eleanor T. Robin and Albert E. Robin (husband and wife), for personal injuries allegedly sustained in an automobile accident which occurred during the afternoon of June 22, 1958, on Tiger Bend Road, a two lane, east-west highway situated in the Parish of East Baton Rouge. The learned trial court rejected plaintiff’s demands and plaintiff has appealed.
More precisely, the accident in question occurred on a segment of the aforesaid highway then being improved by blacktopping. Immediately preceding the accident defendant, Mrs..Robin, accompanied by her two small children, was driving her 1957 Buick automobile westerly in the northern or right westbound lane of travel. Plaintiff, an employee of the contractor engaged in blacktopping that segment of the road being improved, was operating a Ford tractor westerly along the highway drawing a piece of road machinery designated in the record as a “wobble wheel roller”. The record does not describe a “wobble wheel roller” in any great detail but we understand from the testimony it is an item of road building equipment used in the compaction of material utilized for the construction of the roadbed base upon which the asphalt surfacing or blacktopping is applied.
Although both vehicles were traveling in a westerly direction, the accident was precipitated when plaintiff, traveling ahead of Mrs. Robin, either in the center of the highway or entirely in the left lane thereof, suddenly and without signal, attempted to execute a “U” turn to his right in order to reverse his course of travel and proceed in the direction from whence he had come. The left front bumper and fender of defendant’s vehicle struck the right front wheel of the tractor, the impact occurring in the northern or right westbound traffic lane.
*287 Plaintiff maintains the accident occurred solely because of the negligence of Mrs. Robin which is asserted to consist of her driving at an excessive rate of speed under the circumstances, failing to maintain a proper lookout, failing to keep her vehicle under control and passing a vehicle on the right instead of the left as required by law. On the other hand, defendants maintain Mrs. Robin was free of negligence and the accident occurred entirely because of the negligence of plaintiff in failing to maintain a proper lookout and attempting a “U” turn in the path of defendant’s overtaking vehicle without signalling such intention and without first ascertaining such movement could be accomplished in safety. Alternatively, defendants plead plaintiff’s contributory negligence in the aforesaid respects.
From the foregoing it is evident the instant case presents questions of facts only. Except as hereinafter otherwise noted, the parties are virtually in agreement as to the circumstances under which the accident occurred.
On the date of the accident a portion of the aforesaid highway approximately two miles in length was being improved in the manner hereinbefore indicated. The road was open to vehicular traffic and plaintiff was well aware that motorists traveled thereon daily while the work was in progress. Appropriate signs were duly posted along the construction site to warn motorists of the work in progress. Defendant, Mrs. Robin, lived adjacent to the highway under improvement. She traveled over the construction site frequently and was cognizant she was likely to encounter road building machinery in operation while traversing this particular stretch of the highway. There were, however, no signs indicating a maximum legal speed for vehicles in the construction area.
Plaintiff’s testimony is to the effect he was proceeding westerly with his equipment at a speed of approximately five miles per hour. He was seated upon the tractor and concedes he was traveling in the center of the road but more in the left than in the right westbound lane. Plaintiff denies he was entirely within the left lane as contended by Mrs. Robin. Upon nearing the western end of the work project, it became necessary for plaintiff to execute a “U” turn to change direction and proceed over the roadbed to the opposite end with his equipment. Plaintiff intended to make the turn approximately 75 feet short or east of the western extremity of the roadbed being prepared for surfacing. Prior to executing his turn he looked ahead, observed no traffic approaching from that direction and then looked over his left shoulder to his rear to note the presence of any traffic behind him. Noting no overtaking traffic to his rear he then pulled slightly farther to his left and without giving any signal of his intention to do so, suddenly and abruptly commenced a “U” turn to his right. Plaintiff frankly concedes he did not look behind him to his right and that he did not see defendant’s overtaking vehicle until he observed it “come sliding into his tractor” immediately before the moment of impact. Plaintiff denied hearing the sound of defendant’s horn until after the instant of impact.
Mrs. Robin testified she was quite familiar with the construction then in progress as she traveled over the area daily. She further stated she was proceeding westerly in the right lane of travel at a speed estimated at between 10 and 15 miles per hour. She observed plaintiff proceeding ahead of her in the same direction but in the south or left westbound lane instead of in the middle of the highway as testified by plaintiff. Upon observing plaintiff, she concluded there was insufficient space to pass to the left so she elected to pass to plaintiff’s right. Remaining entirely in the right westbound lane, she blew her horn to warn plaintiff of her presence and proceeded to attempt to pass. When she reached a point approximately 20 feet to the rear of plaintiff’s machinery, plaintiff pulled slightly farther to his left and then suddenly, *288 abruptly and without warning' commenced to turn to his right directly across her lane of travel. Mrs. Robin continued to sound her horn and also applied her brakes. After skidding an undisclosed distance the left front bumper and fender of her car struck the right front wheel of the tractor with sufficient force to cause the tire on the tractor to sustain a blowout. The impact, however, resulted in no injury to either plaintiff or her two children. According to plaintiff, the impact was so light the children “did not even bump their heads.” Mrs. Robin frankly testified she expected plaintiff would turn but that she anticipated he would not turn at the point in question but would proceed to the existing blacktopped roadway approximately 75 feet ahead and there execute his turn.
Sergeant Emerson G. Wilkinson, a State Trooper summoned to investigate the accident, in substance testified the collision occurred in the northern or right westbound lane of travel. He was of the impression the tractor was turned over by the force of the impact but we deem his testimony in this regard to be honest error prompted no doubt by the fact the blowout of the right front tire caused the tractor to lean or list to such degree Wilkinson concluded it overturned. Although Sergeant Wilkinson observed skid marks made by the application of defendant’s brakes, he did not consider them significant and made no measurement thereof. In his opinion he felt Mrs. Robin was driving too fast under the attending circumstances but he did not give her a citation for speeding.
Norman Budd, foreman for the contractor performing the work in progress, testified he was standing on the roadway approximately 600 feet east of the point of the accident conversing with an inspector. He observed Mrs. Robin proceeding westerly at what he considered a reasonable and safe speed under the circumstances. According to Budd, the weather was clear, the roadway was free of obstruction which would have impeded plaintiff’s view to either the east or west. He also testified the roadbed was slightly damp or wet because of water applied thereto as an aid to the compaction process being performed by plaintiff with the “wobble wheel roller”. Although Budd did not see the actual impact he was attracted thereto by the noise resulting from the collision. He immediately went to the scene of the accident. According to Budd, the collision occurred in the northern or right westbound lane. He stated further the tractor did not turn over but the blowout of its right front tire caused it to lean considerably to its right.
The law of this state is well settled to the effect a motorist intending to turn around on a public highway or turn from a direct line of travel shall first ascertain there is no traffic vehicular or pedestrian that will be affected or unduly delayed by such maneuver; shall yield the right of way; shall not attempt to turn unless the way is clear and shall give a signal of his intention to turn from a direct line. In this regard, LSA-R.S. 32:235 (A) and LSA-R.S. 32:236 provide as follows:
“§ 235. Turning
“A. The driver of any vehicle on the highways of this state shall ascertain, before turning around upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.”
“§ 236. Signals for stopping, starting, or turning
“A. The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give clearly audible signal by sounding the horn; and, whenever the operation of any other vehicle may be affected by such movement, shall *289 give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement.
“B. The signal herein required shall he given either by means of the hand and arm in the manner herein specified, or by a mechanical or electric signal device approved by the department, except that when a vehicle is so constructed, loaded or operated as to prevent the hand and arm signal from being visible, both to the front and rear, the signal must be given by a device of a type which has been approved by the department. Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to start, stop or turn by extending the arm with the hand open and the back of the hand to the rear, out from and beyond the left side of the vehicle in the following manner:
“Left turn — extended horizontally.
“Right turn — extended upward at an angle of forty-five degrees from shoulder or elbow.
“Stop-start — extended downward at an angle of forty-five degrees from shoulder or elbow.
“Pulling from curb or side of highway — same as for left turns.”
Of the numerous cases cited by counsel for both parties none appear to involve circumstances substantially similar to those incident to the case at bar.
 In interpreting the foregoing statutory provisions the courts of this state have on innumerable prior occasions reiterated the rule that the turning driver is under the obligation of ascertaining the way is clear before making a turn. Vigilant Insurance Co. v. Lumbermen’s Mutual Casualty Co., La.App., 85 So.2d 87. It is also well established jurisprudence a motorist intending to turn must first deter-mine the turn can be made in safety; must yield the right of way to other vehicles and is negligent in either failing to look to his rear or looking and failing to note the presence of a vehicle which he could or should see. Myers v. Maricelli, La.App., 50 So.2d 312; Toney v. Burris, La.App., 45 So.2d 438; Swinney v. Primeaux, La. App., 40 So.2d 754; Dunaway v. Cade, La. App., 39 So.2d 148.
The cases cited as authorities for the rule wherein “U” turns are involved, while admittedly not factually similar to the case at bar, nevertheless announce the general rule a “U” turn is a dangerous if not exceedingly perilous maneuver and must be attended by unusual and extraordinary care and caution on the part of a driver intending such movement. See for example, Audubon Insurance Co. v. Levy, La.App., 73 So.2d 37; Foster v. Fidelity Mutual Insurance Co., La.App., 118 So.2d 139; Alengi v. Hartford Accident & Indemnity Co., La.App., 167 So. 130. The rule established by the cited authorities appears in accord with the general rule regulating the duty of care imposed upon a motorist under such circumstances as set forth in 6 A.L. R. Anno. — Automobiles—U-turns, Page 1244, Section 3, Page 1246, the following portion of which we cite with approval:
“A motorist driving on a public highway and intending to make a reverse or U-turn should exercise proper care in order that his intended movement may not endanger vehicles following his automobile from behind and proceeding in the same direction, by keeping a proper lookout, by giving proper signals of his intention, and by keeping his automobile under proper control, and is under a duty not to attempt to make the turn before ascertaining that there are no automobiles approaching from behind within a reasonable distance, whose movement may be endangered * *
The record in the instant case fails to establish plaintiff’s charge the accident *290 was caused by excessive speed on the part of Mrs. Robin. In this regard Mrs. Robin testified she was proceeding between 10 and 15 miles per hour. In this respect she is corroborated by the testimony of Budd who stated he considered her speed reasonable under the circumstances. Plaintiff’s testimony throws no light on this issue as he concedes he did not see defendant’s vehicle until immediately before the moment of impact. Further evidence of defendant’s slow rate of speed lies in the fact that relatively minor damage was caused the vehicles involved as a result of the collision.
In both oral argument before this court as well as in brief, able counsel for plaintiff attempts to impose liability upon defendant predicated upon Mrs. Robin’s alleged negligence in attempting to pass plaintiff to the right instead of to the left as required by statute. In this regard esteemed counsel for appellant strenuously argues plaintiff was under no duty to look to his right as he had no reason to expect defendant would attempt to pass on the right or improper side. Counsel further argues that upon looking over his shoulder to his left, plaintiff wholly discharged the burden of care incumbent upon him because he was entitled to presume overtaking vehicles would attempt to pass only to his left. We have been cited no authority for plaintiff’s position and are unaware of any precedent which would support the contentions made in this respect.
The learned trial court in rejecting plaintiff’s demand found defendant guilty of negligence in attempting to pass plaintiff’s machinery without first determining with certainty whether plaintiff would attempt a turn. He also found plaintiff was guilty of contributory negligence in attempting a “U” turn across Mrs. Robin’s path without making sure the way was clear.
Pretermitting entirely the issue of defendant’s alleged negligence, we concur in the trial court’s finding plaintiff was guilty of contributory negligence barring his recovery herein. Assuming, arguendo, Mrs. Robin was negligent in attempting to pass plaintiff’s vehicle on the right instead of the left, plaintiff’s negligence in attempting a “U” turn under the circumstances shown, amounted to negligence constituting a proximate cause of the accident and precludes plaintiff’s recovery of damages for injuries sustained therein.
Plaintiff was charged with knowledge the road was open to regular vehicular traffic. Assuming plaintiff was traveling in the center of the road as testified by him (instead of in the left lane as contended by Mrs. Robin), plaintiff was nevertheless charged with knowledge that execution of a sudden, unsignalled “U” turn to his right would cause his vehicle to cross the path of following vehicles traveling in the right westbound lane even though such vehicles were merely following plaintiff’s vehicle without intention to pass. Such an abrupt maneuver without prior signal of his intention to execute same could only endanger, imperil and impede following traffic. Furthermore, Mrs. Robin was traveling in the proper westbound lane and even if she had no intention to pass plaintiff, she was entitled to presume that plaintiff would not unexpectedly and without signal execute a sudden sharp right turn across her path of travel and attempt to reverse his direction of travel. Plaintiff acknowledges that after looking behind him to his left he immediately turned without any observation to his right and without giving any signal whatsoever. In so doing, he failed to discharge the duty and burden of care imposed upon a motorist executing a turn and especially an extremely dangerous right “U” turn, that is, plaintiff failed to first ascertain that such highly dangerous movement could be safely executed. In addition, plaintiff was negligent in failing to note the presence of defendant’s following vehicle and give proper signal of his intention to turn.
For the reasons hereinabove set forth, the judgment of the trial court is affirmed.
Affirmed.