306 So.2d 793 (1975)
Ruth F. PARKER d/b/a La Dama Dress Shop, Plaintiff-Appellant,
v.
Bobby C. BRAWLEY et al., Defendants-Appellees.
No. 12511.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1975.
*794 Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley by James B. Gardner, Shreveport, for defendants-appellees.
Before BOLIN, PRICE and HALL, JJ.
BOLIN, Judge.
Mrs. Parker, d/b/a La Dama Dress Shop, brought this suit against the owners of the building in which her shop is located and against the sublessees of the adjoining premises for water damage to the carpet, interior walls, insulated ceiling panels, and merchandise, as well as loss of profits while her dress shop was closed for repairs and restocking. It is alleged that water flooded the dress shop as a result of the failure of a water line or hot water heater, or both, in the beauty shop located adjacent to the dress shop. Both shops are housed in the same building, which is owned by four of the defendants.
Named defendants are the owners of the building, Dewitt H. Patten, Donald J. Zadeck, Herman Van Os and David Crow; also named were Sybil Bagley, d/b/a Sybil's Beauty Shop, and B. C. Brawley, sublessees of the beauty shop from which the water leaked, and Reserve Insurance Company, their insurer.
The building owners filed a motion for summary judgment which was sustained by the trial judge. Plaintiff appeals and we affirm the judgment of the lower court.
Copies of all contracts of lease and sublease entered into between the owners and the two tenants were attached to the motion for summary judgment. In the affidavit of the owners, attached to the motion, the affiants stated they knew of no defect in the water line, hot water heater, or any other portion of the water system at 5823 or 5825 East Kings Highway (the addresses of the dress shop and beauty shop, respectively); nor were they ever informed of any alleged problem or defect in said system by anyone; but, on the contrary, have relied on the lessees and sublessees to properly inspect and maintain the water line, hot water heater, and other components of the water system in accordance with the obligations of the contracts of lease.
Plaintiff filed no response nor counter-affidavits to the motion for summary judgment. Based upon the motion, the filings attached thereto, and the lack of counter-affidavits, the trial judge determined there was no genuine issue of material facts as between this plaintiff and these defendants. He found further that since the contract of lease, by virtue of which plaintiff occupied the premises where her dress shop was located, specifically exonerated defendant owners of any liability, there could be no liability on the part of the owners-lessors as a matter of law. Accordingly, the motion for summary judgment was granted. Neither the sublessees of the adjoining leased premises nor their insurer joined in the motion and the issue of their liability is not before us.
On this appeal plaintiff, referring to the allegations of the petition, asserts the lower court erred in the following respects:
"In failing to recognize that one level of the action by plaintiff, operator of the dress shop, against the owners of the building in which the beauty shop is located, for the water damage that originated, in the beauty shop and flooded the dress shop, is an action in tort and one that the owner of the beauty shop building and the operator of the beauty shop cannot transfer by contract to the beauty shop operator to the prejudice of the neighboring dress shop.

*795 "In relying upon and acting upon the owners' affidavit to the effect that they did not know of the defective condition in the beauty shop, notwithstanding the allegations of plaintiff's petition to the effect that the owners knew or should have known of the defects.

"In giving effect to La.R.S. 9:3221 as between Mrs. Parker [plaintiff] and the owners of the beauty shop, which act reads:
`The owner of the premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.'"
The issues on appeal are: (1) whether or not defendants, as owners of the building wherein the beauty shop was located, should have known of the alleged defect in the water system as a matter of law; and (2) whether the lessors are insulated from liability to plaintiff by reason of the terms of the lease between plaintiff and defendants.
The original lease, which was assumed by Mrs. Parker, plaintiff sublessee, provides:
"VI. UTILITIES AND MAINTENANCE
A. MaintenanceDemised Premises: Lessor shall maintain in good repair the roof, foundation and exterior walls of the building.
"Lessor further agrees to exercise due diligence in making said repairs, if and when they become necessary, but Lessee herein agrees that said Lessor shall not be held liable or responsible for any damages to Lessee or Lessee's stock, furniture, fixtures and equipment due to defects or delays in connection with the repair thereof. All interior maintenance and repair work of any kind or character whatsoever that may hereinafter become necessary during the term of this lease shall be done by and at the expense of Lessee, including, but not limited thereto, the replacement of broken glass and windows, repair and maintenance of the heating and air conditioning units.. . .
* * * * * *
"VII. USE AND OCCUPANCY
"... Lessee further agrees that it will be solely responsible for all injuries to persons and property resulting from any accident, explosion, leak, cause or catastrophe arising in or about the use of the demise premises and its appurtenances.... Lessee further agrees that Lessor shall not be responsible to the Lessee for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying the adjoining premises or of tenants, if any, occupying any part of the premises adjacent to or connected with the premises hereby demised. The Lessor shall not be responsible to Lessee for any loss or damage which may be caused by the overflow or backing up of any sewer, gas or any gas connection in said building nor for damages caused by the overflow of any revetments, drainage basins or by the back flow of any city sewer or water main."
Plaintiff argues that she has an action against the owners in tort under the provisions of Louisiana Civil Code Articles 670, 2322, 2315 and 2316; additionally, that plaintiff has an action in contract under Civil Code Articles 2692 and 2695, on the theory that the premises leased are not fit for the purpose for which they were leased because of a condition that existed next door and because of a defect in the premises leased by her, in that the water was *796 permitted to flow and seep from the premises next door into her shop.
Plaintiff seeks to hold the lessors-owners liable, without fault, for the flooding under Louisiana Civil Code Articles 2692 and 2695. Those articles provide:
"Art. 2692. The lessor is bound from the very nature of the contract, and without any clause to that effect:
* * * * * *
"2. To maintain the thing in a condition such as to serve for the use for which it is hired.
* * * * * *
"Art. 2695. The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
The only allegations in plaintiff's petition which can be said to refer to any vice or defect in the premises leased by plaintiff are:
"10. Plaintiff shows that the defective water system and the failure thereof at Sybil's Beauty Salon and the flooding of the premises at La Dama Dress Shop constitute defects in both locations which were known or should have been known by the owner thereof."
We have examined the above allegations of the petition and are unable to ascertain the defect [of the thing leased] about which plaintiff claims defendants should have known. The flooding of La Dama Shop caused the damage; however, the flooding itself did not constitute a defect. The only alleged cause of the flooding is found in article 7 of the petition asserting that, "some time during the early morning hours of April 9, 1973, a water line or a hot water heater, or both, failed in the premises at Sybil's Beauty Salon.... and flooded plaintiff's dress shop.. . ."
It is obvious the alleged defect, i. e., the water system, and the "failure" thereof did not occur on the leased premises. The fact that these defendants owned the premises adjoining that leased by plaintiff does not bring the owners nor the defective water system within the purview of Articles 2692 and 2695, since "the thing" which plaintiff leased was comprised of the premises upon which her shop was located.
We consider next the question of the applicability of Louisiana Civil Code Articles 670 and 2322, which provide:
"Art. 670. Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect." (Emphasis added)
"Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." (Emphasis added)
In 1932 the legislature restricted the scope of Article 2322 by the passage of Louisiana Revised Statute 9:3221 providing:
"The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time."
*797 Appellee argues that by operation of the preceding statute [R.S. 9:3221], the lease provisions between the dress shop lessee and the lessors, in the absence of knowledge of any defect in the water system, as reflected by the affidavit, absolves lessors of any contractual or tort liability to the plaintiff for the water damage as alleged in her petition.
Appellant, on the other hand, has asked the court to give a narrow interpretation to the lease provisions and hold them inapplicable because the defect arose next door in the beauty shop and not in plaintiff's dress shop. Thus plaintiff has argued the applicability of Civil Code Article 2695, i. e., that the "flooding" was a defect in her premises, and also the applicability of Civil Code Articles 670 and 2322 because of the defect on the adjoining premises which caused damage to her shop and contents.
The word "fall" in Article 670 and "ruin" in Article 2322 have been defined as having reference to the actual fall or collapse of a building or one of its components. To satisfy the meaning of "ruin" as used in Article 2322 the fall or collapse must involve a more or less substantial component of the structure. See Davis v. Royal Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1970), wherein the court stated:
"This is the attitude in the French law and it is a view expressed in Guidry v. Hamlin, 188 So. 662, 664 (La.App.Orl. 1939), where the Article was said to have `no reference to any situation except that in which some part of the building collapses, or breaks, or gives way.' See Montgomery v. Cantelli, 174 So.2d 238 (La.App.1965) ... The English text of the Louisiana Code of 1808 translates ruine as `falling down'. Comment 42 Tul.L.Rev. 178, 184 (1967). Article 2322 is considered a reiteration of the principle that the building must `fall' expressed in Article 670 of the Civil Code, except that it permits recovery by third persons lawfully on the premises, whereas Article 670 limits the owner's responsibility to neighbors and passers-by."
We conclude that the property damage caused to plaintiff by the flooding of her premises was not the result of a "collapse" nor "fall" such as to constitute a "ruin" as defined in the above cited authorities. Since we have previously decided that plaintiff has failed to sufficiently allege a defect in the leased premises, we need not further discuss this issue.
Our conclusion is bolstered by our belief that by the lease instrument attached to the motion for summary judgment the lessee assumed responsibility for all interior repairs and agreed not to hold lessors responsible for any damage to stock, fixtures, etc., due to defects, nor for damage to property resulting from leaks. While the present plaintiff may still have her cause of action against the lessees of the adjoining premises, she has nevertheless agreed to relieve the owners-lessors from liability for loss occasioned by or through the acts or omission of persons in the adjoining premises.
We conclude the plaintiff has contractually relieved the owners of liability for property damage caused by any "leak" in the premises, whether the leak be from failure of the lessors to find and repair a defective water pipe or from failure of lessees of the adjoining premises to properly install or repair the water heater.
Judgment is affirmed at appellant's cost.
HALL, J., dissents and assigns written reasons.
HALL, Judge (dissenting).
The essential allegations of plaintiff's petition in regard to the liability of the defendants as owners of the premises adjacent to the leased premises are: (1) a water line or a hot water heater, or both, failed in the adjacent beauty shop premises and flooded plaintiff's dress shop causing *798 extensive damage to the interior and contents of the leased premises; (2) the defective water system and the failure thereof in the beauty shop constituted a defect in the beauty shop which was known or should have been known by the owners thereof; and (3) the owners of the beauty shop are liable to plaintiff by reason of their fault and negligence in failing to guard against the event complained of.
The only alleged fact negated by the defendants' affidavit attached to the motion for summary judgment is that defendants knew about the problem. The allegations that defendants should have known about the defect and were at fault and negligent in failing to guard against the event complained of stand uncontradicted insofar as consideration of the motion for summary judgment is concerned.
If plaintiff can prove the allegations of her petition, i. e. that her damage was caused by the failure of a defective water system in adjacent premises owned by defendants who should have known of the defects and who negligently failed to guard against the event complained of, then plaintiff may be entitled to recover from the owners under LSA-C.C. Arts. 2315 and 2316, and possibly under LSA-C.C. Arts. 667-670. The motion for summary judgment, with the supporting affidavits and documents, do not preclude the existence of disputed issues of material fact nor preclude the possibility of recovery by plaintiff depending on what facts are eventually established upon trial of the case.
There is nothing in the lease contract between plaintiff and the defendant-owners which exonerates defendants from liability for damages suffered by plaintiff caused by defects in the adjacent premises which the defendants should have known of and negligently failed to guard against. The clause in the lease to which the majority opinion would give such effect relates to matters arising within the leased premises not to matters arising in adjacent premises. Under that clause, plaintiff-lessee agreed to be solely responsible for injuries to persons and property resulting from any accident, leak, etc. arising in or about the leased premises. The clause does not have the meaning or effect of exonerating the lessor-owner from liability for damage to plaintiff's property resulting from defects or negligence arising in the adjacent premises.
An almost identical lease provision was considered by this court in Standard Office Supply Company v. Stonewall Investment Company, 267 So.2d 768 (La.App. 2d Cir. 1972) in the context of very similar factual circumstances. This court held that such an agreement is effective to exempt the lessor from liability for damages resulting from the condition of the leased premises under LSA-R.S. 9:3221, but that the statute does not apply to damages incurred by the lessee resulting from a defect in property which is not part of the leased premises and over which the lessee has no supervision or control. In that case we reversed a summary judgment rendered in favor of defendant-lessor and remanded the case for trial. I cannot distinguish the Standard Office Supply case from the instant case and believe the reasoning and result of that case is applicable and controlling here.
The lease contract between the defendant-owners and the lessee of the beauty shop does not and cannot affect the defendants' liability to plaintiff. LSA-R.S. 9:3221 does not apply to damages to persons who are not on the leased premises.
For the foregoing reasons, it is my view that the granting of the motion for summary judgment is in error, that the judgment of the district court should be reversed and the case remanded for further proceedings. I respectfully dissent.